## Harold Winter et al v. John Unaitis et al

[189 A.2d 547]

January Term, 1963

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 6, 1963

*John A. Rocray* and *Robert H. Gibson* for the plaintiff.

*Fitts & Olson* for the defendant.

**Shangraw, J.** This is a negligence action. The case came on for trial by jury. The jury was empanelled, and at the close of the

plaintiffs' opening statement the defendants moved that the cause be dismissed on the ground that the facts enumerated in the statement, even if proved, would not support a verdict for the plaintiffs. This motion for a dismissal was amended to one for a directed verdict on the same ground.

The motion, as amended, was denied, and upon request of the defendants this issue was certified by the court below to this Court, pursuant to the provisions of Title 12, V.S.A. §2386.

On voir dire the following is, in part, the statement made by plaintiffs' counsel.

"Briefly, ladies and gentlemen, this action has been brought by Harold Winter and by him on behalf of his daughter to recover damages for negligence which has allegedly been committed by the defendants. At the time this action arose Mr. and Mrs. Winter were tenants in an apartment house on the Unaitis property, living there with their children while Harold Winter worked for the defendants as a farm hand. Specifically the plaintiffs have alleged that a part of the Unaitis property adjacent to the tenement occupied by the plaintiffs was maintained and controlled by the defendants and that by their failure to maintain it in a reasonably safe condition the plaintiffs have alleged that a blasting cap was permitted to be on the premises which came into the possession, along with other children, of the plaintiff Georgia Winter through one of the defendants' children; that subsequent to this the blasting cap was accidently set off resulting in serious physical injuries to Georgia Winter, all as alleged by the plaintiffs as a result of the defendant's failure to reasonably maintain their premises for the plaintiff."

Following the empanelling of the jury, plaintiff's counsel in part stated:

". . . during the time the Winter family resided on the defendants' property in Vernon, during the period of Harold Winter's employment by the defendants on the Tyler Farm that they occupied one-half of a two tenement house maintained by the Unaitis for the occupancy of farmers and farmers' families who were in the Unaitis employ. The evidence will show that on the back of this two family tenement was an entry way and shed which was used by

> the Winter's family as an access route to their apartment and was also used by the other family occupying the other half of the two tenement house as an access route into the rear of their tenement . . . stove wood stored in this shed to be used by both tenements . . . The shed in addition to these uses had several other things for which it served the owners, Mr. and Mrs. Unaitis . . . the shed was used by the children of both families living in the tenement as a play area . . ."

Plaintiffs' counsel then went on to state that the defendants in this case "had effective and actual control" over this particular shed area and that under the Vermont law it was their duty to maintain it in a reasonably safe fashion. Counsel for the plaintiffs added that blasting caps were found in the shed by the children. One was given to Georgia Winter which exploded, causing her severe injuries. The injuries to Georgia, a minor child, were then referred to.

We have no statute or case law in Vermont which requires an opening statement by the parties. While it is the usual custom to do so, an opening statement is ordinarily intended to do no more than inform the jury in a general way of the nature of the action, and defense, so that they may better be prepared to understand the evidence.

To grant a motion for a directed verdict on an opening statement is an extreme measure and trial courts should invoke it most cautiously. Such a statement must be construed liberally and favorably in behalf of the party making it. *Taylor* v. *Blake,* 109 Vt. 88, 90, 191 Atl. 923; *Custer* v. *Atlantic & Pacific Tea Co.,* D. C. Mun. App., 43 A.2d 716; *Oscanyan* v. *Winchester Repeating Arms Co.,* 103 U. S. 261, 26 L.Ed 539.

Only when it is clear in advance that a plaintiff is absolutely precluded from a recovery may the trial court decide the case upon the opening statement. A clear guide has been given by the Supreme Court in *Best* v. *District of Columbia,* 291 U. S. 411, 54 S.Ct. 487, 489, 78 L.Ed. 882, where it is said: "Plaintiff is entitled to the benefit of all inferences that may be drawn from his counsel's statement. To warrant the court in directing a verdict for the defendant upon that statement, it is not enough that the statement be lacking in definiteness, but it must clearly appear, after resolving all doubts in plaintiff's

favor, that no cause of action exists." *Oscanyan* v. *Winchester Repeating Arms Co., supra.* On this subject see *Carr* v. *Merrimack Farmers Exchange, Inc.,* 101 N. H. 84, 133 A.2d 497; *Rerkman* v. *Cohn,* 111 N.J.L. 299, 168 Atl. 290; *Rotman* v. *Levine,* 131 N.J.L. 205, 35 A.2d 607, 608; Annotations, 83 A.L.R. 221, and 129 A.L.R. 557.

The net result, as applied here, is that when an opening statement is made by a plaintiff a directed verdict thereon cannot be sustained unless by some form of judicial admission the very basis of the action is destroyed, or shown to be lacking. It follows that when an opening statement is made by a plaintiff or defendant, the party electing to make such a statement may become judicially bound by what is said, rather than by what has not been said.

Without delving into the required proof, it is apparent from the opening statement of the plaintiffs that a number of evidentiary factors will determine the outcome of a trial in this case. Even though all essential elements of proposed proof were omitted in the statement, no admissions were contained therein which would preclude recovery as a matter of law. No error appears in the denial of the defendant's motion for a directed verdict. The defendants struck too soon. See *Fletcher* v. *London and North Western Railway Company,* 1 Queen's Bench, (1892) page 122.

In the plaintiffs' opening statement counsel made reference to the law applicable in the case to which the defendants objected. See *Laferriere* v. *Gray,* 104 Vt. 366, 371, 160 Atl. 270; *Lewis* v. *Crane & Sons,* 78 Vt. 216, 220, 62 Atl. 60. Objections were also made by the plaintiffs and the defendants to the ruling of the court limiting the plaintiffs to six peremptory challenges, and the defendants twelve, under the provisions of 12 V.S.A. §1941. While these questions were briefed, the motion of the defendants for a certification to this Court was limited to the issue of the denial of the defendants' motion for a directed verdict based upon the opening statement of the plaintiffs. Moreover, in view of our entry in this case these questions, at this stage of the case, become moot and require no consideration here.

*The motion for a directed verdict was properly denied, and the cause is remanded.*